NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| INTERNATIONAL FOODSOURCE, LLC, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| GROWER DIRECT NUT CO., INC. and | : | Civ. No. 16-cv-3140 (WHW)(CLW) |
| AARON MARTELLA, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

      This matter arises out of a dispute between Plaintiff International Foodsource, LLC, a food product wholesaler, and Defendant Grower Direct Nut Co., Inc., a supplier of walnuts, over two contracts for the sale of a large quantity of walnuts. Arbitration of the Parties' dispute is pending before a private organization in California, as provided by an arbitration provision in the contracts. Plaintiff seeks a declaratory judgment declaring the arbitration provision unenforceable and brings various New Jersey state law claims against Defendants Grower Direct Nut Co. and Aaron Martella for representations they allegedly made when negotiating the contracts. Plaintiff moves for a temporary injunction staying the arbitration proceedings, and Defendants move to compel arbitration and dismiss this action for lack of jurisdiction. Plaintiff has also filed a motion seeking a temporary restraining order and order to show cause staying the arbitration proceedings pending the Court's resolution of Plaintiff's motion for a preliminary injunction. Decided without oral argument under Fed. R. Civ. P. 78(b), Plaintiff's motions are denied and Defendants' motion is granted in part.

1

NOT FOR PUBLICATION

## FACTUAL AND PROCEDURAL BACKGROUND

Except where noted, the following facts are taken as alleged in Plaintiff's complaint. Notice of Removal Ex. A, ECF No. 1-1. Plaintiff International Foodsource LLC ("IFS"), a New Jersey corporation with its principal place of business in Dover, New Jersey, is an "importer, repacker, manufacturer, and wholesaler of specialty foods." *Id.* ¶¶ 5, 9. Defendant Grower Direct Nut Co., Inc. ("GDNC"), a California corporation with its principal place of business in Hughson California, is a "large and established walnut supplier in the U.S., with presence in markets throughout the country." *Id.* ¶¶ 6, 11. Defendant Aaron Martella, who resides in Hughson, California, is a principal of GDNC. *Id.* ¶ 7. "For many years and through 2013, GDNC acted as a supplier of walnuts to IFS." *Id.* ¶ 12. Non-party American Dried Fruit & Nut Company ("American") is a broker that sells walnuts for GDNC throughout the northeastern United States. *Id.* ¶ 13. Non-party DFA of California ("DFA") is a California-based trade organization composed of California dried fruit and nut packers and processors, including GDNC. *Id.* ¶ 25.

## I.    The disputed walnut contracts

In the spring of 2015, non-party Al Kadouri, a purchaser for Plaintiff IFS, met with Defendant Martella to discuss the possibility of Plaintiff purchasing walnuts from Defendant GDNC. *Id.* ¶ 14; Decl. Aaron Martella in Supp. Def. Mot. Compel Arbitration, ECF No. 6-3 ¶ 5. According to Defendant Martella, Mr. Kadouri met with representatives of Defendant GDNC, including Martella, at GDNC's facility in Hughson, California on April 21, 2015. ECF No. 6-3 ¶ 7. Defendant Martella states that they discussed walnut prices and delivery times during this meeting and continued to negotiate by email after the meeting, and that Mr. Kadouri requested that Defendant GDNC send walnut samples to his office in New York. *Id.* ¶ 8. Defendant Martella priced "light amber halves and pieces" at $3.60 per pound and "light amber pieces" at

2

NOT FOR PUBLICATION

$3.70 per pound, representing to Mr. Kadouri that these prices were consistent with prevailing United States market prices for walnuts. ECF No. 1-1 ¶¶ 15-16. Defendant Martella also told Mr. Kadouri that the market price would soon increase because Chinese purchasers had begun heavily purchasing walnuts from American suppliers, and he urged Mr. Kadouri to purchase a large quantity of walnuts before the price increased. *Id.* ¶ 16. According to Plaintiff, Defendant Martella knew at the time of this conversation that (a) the prevailing market price for walnuts was not $3.60/$3.70 per pound and (b) walnut prices were not going to increase. *Id.*

As a result of the conversation between Mr. Kadouri and Defendant Martella, Plaintiff IFS and Defendant GDNC entered into two sales contracts, contract numbers 14922 and 14923, on May 1, 2015 (the "walnut contracts"). *Id.* ¶ 20. Defendant Martella alleges that Mr. Kadouri received the walnut contracts in New York, sent them to Dan Baron, the CEO of Plaintiff IFS, for execution, and returned them to GDNC. ECF No. 6-3 ¶ 8. In contract number 14922, Plaintiff agreed to purchase 168,000 pounds of light amber walnut halves from Defendant GDNC at $3.60 per pound, for a total contract price of $604,800.00. *Id.* ¶ 21; *see also* Contract Number 14922, ECF No. 1-1 Ex. A. In contract number 14923, Plaintiff agreed to purchase 84,000 pounds of light amber walnut pieces from Defendant GDNC at $3.70 per pound, for a total contract price of $310,000.00. ECF No. 1-1 ¶ 22; Contract Number 14923, Decl. Aaron Martella in Supp. Def. Mot. Compel Arbitration, ECF No. 6-3 Ex. B. Plaintiff claims that it agreed to purchase a larger quantity of walnuts than it otherwise would have because of Defendant Martella's representations about the walnut market forecast. *Id.* ¶ 18. The contracts specified that shipments could begin on May 1, 2015 and would run through October 31, 2015. *Id.* ¶ 23; *see also* ECF No. 1-1 Ex. A; ECF No. 6-3 Ex. B. The contract "Delivery Terms" listed "HUGHSON CA" as the "FAC – INCOTERM 2010 – FREE CARRIER (NAMED PLACE OF DELIVERY)," ECF No.

NOT FOR PUBLICATION

1-1 Ex. A; ECF No. 6-3 Ex. B, which Defendant Martella states meant that Plaintiff IFS was required to take delivery of the walnuts during the contractual period at Defendant GDNC's facility in California. ECF No. 6-3 ¶ 9.

Shortly after the Parties entered into the walnut contracts, the market price for walnuts dropped, *id*. ¶ 28, and Plaintiff was unable to find purchasers willing to pay higher prices for the walnuts than the contract prices. *Id*. ¶ 31. Plaintiff represents that Defendant GDNC had been willing to renegotiate earlier contracts when market prices changed, and that this is a "common industry practice in the dried fruit and nut industry." *Id*. ¶¶ 32-33. On October 14, 2015, two weeks before the end of the contractual shipment period, Plaintiff received an email from a principal at American stating that Defendant Martella "recognizes market has fallen" but still wanted to ship the walnuts specified in the contracts, and that Defendant Martella had asked American to "work something out with" IFS "on his behalf." *Id*. ¶ 35; *see also* October 14, 2015 email from Robert Ferrara to Dan Baron, ECF No. 1-1 Ex. B. Mr. Kadouri called Defendant Martella on the telephone to discuss the email from American, but Defendant allegedly informed Mr. Kadouri that GDNC intended to "screw" Plaintiff IFS. ECF No. 1-1 ¶ 37. Plaintiff allowed the contractual shipping period to expire without taking delivery of any walnuts from Defendant GDNC. *Id*. ¶ 31. At the end of the contractual shipping period, Defendant GDNC allegedly destroyed the walnuts. *Id*. ¶ 39.

## II.   The arbitration provision and pending arbitration proceedings

The walnut contracts were drafted by GDNC, ECF No. 1-1 ¶ 20, and included a section labeled "Buyer Conditions" that reads: "Upon signing, the Buyer agrees to purchase the named goods, in the quantities, at the prices (s), and at the terms and conditions provided herein. Any claim relating to this contract shall be settled by arbitration in California by the DFA with its

4

NOT FOR PUBLICATION

rules, and judgment may be entered upon ". *Id.* ¶ 24; ECF No. 1-1 Ex. A (the "arbitration clause") (no period at end of statement in original). At the time they entered into the walnut contracts, Defendant GDNC and Plaintiff IFS did not discuss DFA or its arbitration rules and procedures. ECF No. 1-1 ¶ 26.

On January 20, 2016, DFA issued a letter to Plaintiff IFS informing Plaintiff that Defendant GDNC had requested arbitration regarding the two contracts and directing Plaintiff to pay a $3,500 arbitration fee. *Id.* ¶ 38; *see also* January 20, 2016 Arbitration Letter, ECF No. 6-3 Ex. D. Mr. Baron contacted DFA on behalf of Plaintiff on February 9, 2016 seeking "plenty of extension time in order to defend this action appropriately," and DFA responded the next day with a request for Plaintiff's consent to the arbitration. *See* February 9 and 10 Emails between Dan Baron and E. Jeremiah Szabo, Association Secretary of DFA, ECF No. 6-3 Ex. E. On March 11, 2016, DFA issued another letter to Plaintiff requesting Plaintiff's consent to the arbitration proceeding and informing Plaintiff that "DFA will still move forward with the arbitration." March 11, 2016 Arbitration Letter, ECF No. 6-3 Ex. F. DFA provided Plaintiff with a copy of DFA's arbitration procedures on March 16, 2016. Arbitration Procedures, Decl. Adam K. Derman in Further Supp. P. Mot. Stay Arbitration and Reply D. Mot. Compel Arbitration, ECF No. 12-1 Ex. C. Counsel for Plaintiff continued to correspond with DFA, informing DFA by email on April 4, 2016 that Plaintiff was "prepared to participate and defend the arbitration" but "reserves its rights to dispute the jurisdiction of the arbitration over this claim." March 12-April 4, 2016 Emails between Adam K. Derman and E. Jeremiah Szabo, ECF No. 12-1 Ex. E at 1. In response to another letter from DFA seeking the arbitration fee and informing Plaintiff that DFA would "begin moving forward with the selection of arbiters," *see* April 22, 2016 Arbitration Letter, ECF No. 12-1 Ex. F, counsel for Plaintiff submitted a letter to DFA repeating that "IFS

NOT FOR PUBLICATION

intends to defend the arbitration demand but reserved its right to dispute the jurisdiction of the arbitration over this claim," stating Plaintiff's belief that the arbitration provisions of the contracts are unenforceable under New Jersey law, and requesting that DFA stay the arbitration proceedings pending an adjudication of the enforceability of the arbitration provisions in the New Jersey Superior Court." May 2, 2016 Letter from Adam K. Derman to E. Jeremiah Szabo, ECF No. 12-1 Ex. G at 1.

### III.  Plaintiff's complaint

On May 21, 2016, Plaintiff filed a six-count complaint against Defendants GDNC and Martella in the Superior Court of New Jersey, Law Division, Morris County. ECF No. 1-1. In Count One, Plaintiff seeks a declaratory judgment holding that the arbitration clause in the contracts is void and unenforceable and ordering that the DFA arbitration proceeding in California be dismissed. *Id.* ¶¶ 20-45. In Count Two, Plaintiff brings a claim against Defendant GDNC for breach of the implied covenant of good faith and fair dealing, as defined by N.J.S.A. § 12A:1-201(b)(20), in connection with GDNC's alleged misrepresentations about the current and future market prices for walnuts at the time the walnut contracts were being negotiated and GDNC's alleged refusal to "engage in a good faith effort at a workout with IFS" when walnut prices dropped. *Id.* ¶¶ 46-54. In Count Three, Plaintiff brings New Jersey common law claims against Defendants GDNC and Martella for fraudulent inducement, again in connection with the alleged misrepresentations about the current and future market prices for walnuts. *Id.* ¶¶ 55-60. In Count Four, Plaintiff brings New Jersey common law claims against both Defendants for equitable fraud in connection with the same alleged misrepresentations. *Id.* ¶ 62-66. In Count Five, Plaintiff brings New Jersey common law claims against both Defendants for negligent misrepresentation or omissions of fact in connection with the same alleged misrepresentations.

6

NOT FOR PUBLICATION

*Id*. ¶¶ 67-71. In Count Six, Plaintiff brings a claim against Defendant GDNC for failure to
comply with N.J.S.A. 12:2-709(2), which requires a seller seeking to recover damages for breach
of a contract for the sale of goods to either hold the goods "for the buyer" or to resell them before
obtaining judgment. *Id*. ¶¶ 72-77. In addition to the declaratory judgment regarding the
arbitration proceeding, Plaintiff seeks compensatory damages, consequential damages, a
declaration that it does not owe Defendant GDNC any money, rescission and/or reformation of
the contracts, and an award of attorneys' fees and costs. *Id*. at 14.

On June 1, 2016, Defendants removed the action to this Court under 28 U.S.C. §§
1441(a) and (b) and 1446(a)-(d). Notice of Removal, ECF No. 1. Subject matter jurisdiction
exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the
Parties and the amount in controversy exceeds $75,000. *Id*. ¶ 2.

## IV.    Plaintiff's motion to stay arbitration proceedings and Defendants' motion to compel arbitration and dismiss

On June 21, 2016, Plaintiff filed a motion in this Court seeking an order staying the
arbitration captioned *Grower Direct Nut Co. v. International Foodsource, LLC*, administered by
the DFA of California, File No. 423, pending the final resolution of this case. P. Mot. Stay
Arbitration Proceedings, ECF No. 4. Plaintiff argues that a stay is warranted because the
enforceability of a contractual arbitration clause – which Plaintiff challenges in this case – is a
"threshold matter" that should be determined before a party is required to submit to arbitration.
*Id*. at 8-9. Plaintiff argues that it is likely to prevail on Count One of its complaint because the
arbitration clause in the contracts is unenforceable as a matter of New Jersey law. *Id*. at 11.

On June 22, 2016, Defendants filed a joint motion to stay the action and compel
arbitration under Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.

NOT FOR PUBLICATION

and Fed. R. Civ. P. 12(b)(1), (3), and (6), and to dismiss Plaintiff's complaint with respect to
Defendant Martella for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Def. Mot.
Compel Arbitration and Dismiss, ECF No. 6. Defendants argue that the law of California, and
not New Jersey, governs the construction of the arbitration clause; that the arbitration clause is
enforceable under California law; that even if New Jersey law governed the construction of the
walnut contracts, *Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430 (2014), the New
Jersey Supreme Court case Plaintiff cites in support of its position, does not apply to the
contracts at issue in this case; that *Atalese* is preempted by the FAA; and that Plaintiff has
waived any objection to arbitration. *Id.* at 7-19. Defendants also argue that this Court does not
have personal jurisdiction over Defendant Martella because Plaintiff has not established that he
has the requisite "minimum contacts" with the state of New Jersey or that the principals of "fair
play and substantial justice" allow the Court to exercise jurisdiction over him. *Id.* at 19-21.

Defendants filed a brief in opposition to Plaintiff's motion to stay arbitration on July 6,
2016, repeating its argument that the arbitration clause is enforceable and further arguing this
Court is the improper venue for a motion to stay arbitration proceedings. ECF No. 9. Plaintiff
filed a motion in opposition to Defendants' motion to compel arbitration and in further support
of its motion to stay arbitration on July 16, 2016. ECF No. 12. Defendants filed a reply brief in
further support of their motion to compel arbitration on July 25, 2016. ECF No. 13.

**V.    Plaintiff's motion for a temporary restraining order and order to show cause**

On July 7, 2016, Plaintiff submitted a letter, with consent of Defendants, seeking to
extend the briefing schedule for Plaintiff's motion for a preliminary injunction so that it would
be returnable on August 1, 2016, the same date as Defendant's motion to compel arbitration.
ECF No. 10. The Court approved the amended briefing schedule on July 14, 2016. ECF No. 11.

NOT FOR PUBLICATION

Plaintiff apparently regretted its request for an extension of time. On July 28, 2016, Plaintiff filed a motion seeking (a) a temporary restraining order staying the arbitration proceeding pending the resolution of its preliminary injunction motion and (b) an order to show cause as to why the preliminary injunction should not issue. Motion for Order to Show Cause, ECF No. 15. Plaintiff argues that emergent relief is warranted because arbitration is scheduled to begin on August 4, 2016, soon after the amended motion date of the Parties' original two motions. *Id.*; Letter from Adam K. Derman re: Motion for Order to Show Cause, ECF No. 14.

### LEGAL STANDARD

#### I.   **Motion to compel arbitration**

Section 4 of the FAA permits a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 3 provides that, whenever a suit is brought in federal court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. When a party requests a stay under § 3 in a motion to compel arbitration, the district court is "obligated under 9 U.S.C. § 3 to grant the stay once it decide[s] to order arbitration," and has no discretion to instead dismiss the case. *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004).

Because '[a]rbitration is a matter of contract between the parties,' a judicial mandate to arbitrate must be predicated upon the parties' consent.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). The FAA "enables the enforcement of a

9

NOT FOR PUBLICATION

contract to arbitrate, but requires that a court shall be 'satisfied that the making of the agreement

for arbitration . . . is not in issue' before it orders arbitration." *Id.* (citing 9 U.S.C. § 4). If the

making of the arbitration agreement is in issue, then "'the court shall proceed summarily to the

trial' of that issue." *Id.* (quoting *Par-Knit Mills*, 636 F.2d at 54). "[W]hen it is apparent, based on

'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's

claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration shall be

considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id.* at 775 (quoting

*Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa.

2011)) (alterations and internal citations and quotations omitted). "But if the complaint and its

supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has

responded to a motion to compel arbitration with additional facts sufficient to place the

agreement to arbitrate in issue," then the court should first allow the parties to conduct discovery

on the issue of arbitrability and then "entertain a renewed motion to compel arbitration, this time

judging the motion under a summary judgment standard," as governed by Fed. R. Civ. P. 56. *Id.*

(citing *Somerset*, 832 F. Supp. 2d at 482).

Plaintiff here incorporates the arbitration clause of the walnut contracts directly into its

complaint: not only does Plaintiff attach a copy of contract number 14922 to the complaint and

discuss the arbitration clause in both contracts, *see* ECF No. 1-1 ¶ 24; ECF No. 1-1 Ex. A, but

the enforceability of the arbitration clause is the subject of Count One. ECF No. 1-1 ¶¶ 20-45.

Although Plaintiff responds to Defendants' motion to compel arbitration by attempting to "place

the agreement to arbitrate in issue," *Guidotti*, 716 F.3d at 775, Plaintiff does not raise "additional

facts" not incorporated into the complaint or its attachments or argue that the "complaint and its

supporting documents are unclear regarding the agreement to arbitrate." *Id.* Instead, Plaintiff

10

NOT FOR PUBLICATION

argues that the arbitration clause, on its face, is unenforceable as a matter of law.[1] The Court

considers Defendants' motion to compel arbitration under a Rule 12(b)(6) motion to dismiss

standard. *See Somerset*, 832 F. Supp. 2d at 486 (applying Rule 12(b)(6) motion to dismiss

standard where plaintiffs "concede[ ] that their claims come within the ambit of the agreement's

arbitration clause" but "advance two reasons . . . that the arbitration clause of the agreement is

unenforceable").

       Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under

Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of

the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*

(internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'shown'—that the pleader is entitled to relief." *Id.* at 679. A party filing a motion to dismiss

---

[1] Plaintiff does allege that the parties did not discuss "what DFA was, what DFA arbitration entailed, nor did GDNC provide IFS with a copy of DFA's rules" at the time the Parties entered into the contracts. ECF No. 1-1 ¶ 26. To the extent this fact is material, it is not in dispute and supports the Court's decision to consider the walnut contracts on their face.

NOT FOR PUBLICATION

under Rule 12(b)(6) may raise any "affirmative defense" that "clearly appears on the face of the pleading." *Somerset*, 832 F. Supp. 2d at 481 (citing *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)).

In considering the plaintiff's claims, a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (3d ed. 2014). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).[2]

## II.   Motion for preliminary injunction and motion for temporary restraining order staying arbitration proceedings

"[U]nder the FAA, the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the court for a stay of arbitration." *Kelly v. MBNA America Bank*, 528 F. Supp. 2d 490, 493 (D. Del. 2008) (citing *Mays v. Lanier Worldwide, Inc.*, 115 F. Supp. 2d 1330, 1342-43 (M.D. Ala. 2000); 9 U.S.C. § 4). The Court will consider Plaintiff's motion to stay arbitration as a motion for a preliminary injunction under Fed. R. Civ. P. 65(a). *See* ECF No. 12 at 22 (citing *Thomas Glob. Grp., LLC v. Watkins*, 2014 WL 1371719, at *3

---

[2] "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

NOT FOR PUBLICATION

(D.N.J. Apr. 8, 2014) (addressing motion to stay arbitration proceedings under Fed. R. Civ. P.

65(a) standard).

Federal Rule of Civil Procedure 65 "empowers courts to grant preliminary injunctions."

*Doe v. Banos*, 713 F. Supp. 2d 404, 410 (D.N.J.) *aff'd*, 416 Fed App'x 185 (3d Cir. 2010).

"Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited

circumstances.'" *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)

(quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427

(3d Cir. 1994). "A plaintiff seeking a preliminary injunction must establish that he is likely to

succeed on the merits, that he is likely to suffer harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Ferring*

*Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014)

(quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). With regard

to the second prong, "where the relief ordered by the preliminary injunction is mandatory and

will alter the status quo, the party seeking the injunction must meet a higher standard of showing

irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix*

*Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Associates, Inc.*

*v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2nd Cir. 1995)). "The burden lies with the

[movant] to establish every element in its favor, or the grant of a preliminary injunction is

inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428

F.3d 504, 508 (3d Cir. 2005) (citations omitted).

"If there is a possibility that irreparable injury will occur before the hearing on a

preliminary injunction required by Rule 65(a) can be held, a temporary restraining order may be

available under Rule 65(b)." *Trefelner ex rel. Trefelner v. Burrell School Dist.*, 655 F. Supp. 2d

NOT FOR PUBLICATION

581, 588 (W.D. Pa. 2009) (citing Fed. R. Civ. P. 65(b). "The standard used to evaluate whether

the issuance of a temporary restraining order is warranted is the same as that used to evaluate

whether the issuance of a preliminary injunction is appropriate." *Id.* (citation omitted). A party

must show (1) a likelihood of success on the merits, (2) that it will suffer irreparable harm if the

injunction is denied, (3) that granting preliminary relief will not result in even greater harm to the

nonmoving party, and (4) the public interest favors such relief. *Id.* (citing *Kos Pharmaceuticals,*

*Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)).

## DISCUSSION

The Parties do not dispute that Plaintiff entered into contracts with Defendant GDNC that

contain identical arbitration clauses. The question central to both Plaintiff's motions to stay

arbitration and Defendants' motion to compel arbitration is whether the arbitration clause in the

walnut contracts is enforceable. The Court will first determine whether, as Defendants argue,

Plaintiff has waived its right to contest arbitration. If necessary, the Court will then determine

which state's law governs the construction of the contracts and whether the arbitration clause is

valid and enforceable under that law.

### I.   Plaintiff did not waive its right to challenge the arbitration clause

Defendants argue that Plaintiff waived its right to object to the DFA arbitration in its

correspondence with DFA. ECF No. 6 at 12-13. The Court disagrees.

Waiver "involves the intentional relinquishment of a known right, and thus it must be

shown that the party charged with waiver knew of his or her legal rights and deliberately

intended to relinquish them." *Gillman v. Waters, McPherson, McNeill, P.C.*, 271 F.3d 131, 140

(3d Cir. 2001) (quoting *Shebar v. Sanyo Business Systems Corp.*, 111 N.J. 276, 544 (N.J. 1988)).

NOT FOR PUBLICATION

Defendants claim that Plaintiff waived its right to contest the validity of the arbitration clause by agreeing to "defend the arbitration" on April 4, 2016 and eventually submitting the required arbitration fee. ECF No. 6 at 13. This argument is contradicted by the very same documents Defendants rely on. In the April 4, 2016 letter, counsel for Plaintiff expressly stated that Plaintiff "reserves its rights to dispute the jurisdiction of the arbitration over this claim." ECF No. 12-1 Ex. E at 1. Though Defendants contend that this statement is a "clear post-dispute agreement to submit any jurisdictional issue to the arbitrators," ECF No. 6 at 13, Plaintiff's May 2, 2016 letter submitting the $3,500 arbitration fee demonstrates otherwise: in the May 2 letter, Plaintiff's counsel repeated to DFA that Plaintiff "intends to defend the arbitration demand but reserved its right to dispute the jurisdiction of the arbitration over this claim;" informed DFA of Plaintiff's challenge, in New Jersey state court, to the validity of the arbitration agreement under New Jersey law; and requested a stay of the arbitration proceeding pending the court's determination. ECF No. 12-1 Ex. G. At the very least, this Court cannot find that Plaintiff "deliberately intended" to relinquish its right to challenge the enforceability of the arbitration clause. Plaintiff is not estopped from arguing that the clause is unenforceable.

## II.     The arbitration clause is enforceable and requires a stay pending arbitration

Having decided that Plaintiff may challenge the arbitration clause, the Court now determines (a) whether the clause requires arbitration of Plaintiff's claims and a stay of this action and, if not, (b) whether to stay the arbitration proceedings pending this Court's resolution of Plaintiff's claims.

### A. The Court has jurisdiction to determine the validity of the arbitration clause

Section 2 of the FAA provides, in part, that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

NOT FOR PUBLICATION

arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). Although the FAA reflects a "liberal federal policy favoring arbitration," *id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), the "final phrase of § 2 . . . permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.*

In *Buckeye Check Cashing, Inc. v. Cardegna*, the Supreme Court distinguished between two types of challenges to the enforceability of an arbitration agreement. "One type challenges specifically the validity of the agreement to arbitrate." 546 U.S. 440, 444 (2006). "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* Challenges to the validity of the contract as a whole are "considered by the arbitrator in the first instance," but challenges to the validity of an arbitration agreement may be adjudicated by a federal court. *Id.* at 444-46 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)); *see also Quillioin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) ("[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination").

In Counts Two through Six of the complaint, Plaintiff challenges the enforceability of the contracts as a whole. ECF No. 1-1 ¶¶ 45-77. Before the Court right now, however, are two motions that require a determination of the enforceability of the arbitration clause itself. The Court has jurisdiction to address this question.

16

NOT FOR PUBLICATION

### B. The arbitration clause is governed by California law

As discussed, Plaintiff's motion for a stay of arbitration proceedings is premised on the argument that arbitration clause is invalid as a matter of New Jersey law. *See* ECF No. 4 at 10-12. Defendants argue that California law, not New Jersey law, governs the construction of the arbitration clause in the walnut contracts. ECF No. 6 at 8-12.

#### 1. Applicable law

"A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). A federal court sitting in diversity, as the Court does here, must follow the substantive law of the forum state, including that state's choice-of-law rules. *Robeson Industries Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 165 (3d Cir. 1999) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).

The Court follows New Jersey's choice-of-law rules to determine which state's law governs the construction of the arbitration clause in the walnut contracts. "Under New Jersey law, choice-of-law determinations involve a two-step inquiry. In the first step, a determination is made as to whether or not an actual conflict exists between the substance of the laws of each respective potential forum." *Cooper v. Samsung Electronics America, Inc.*, 374 Fed App'x 250, 254 (3d Cir. 2010) (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If no actual conflict exists, "the inquiry is over." *Id.* (quoting *Lebegern*, 471 F.3d at 428). If a conflict exists, "New Jersey courts ask which forum has the most significant relationship with the parties and the contract." *Forestal Guarani S.A. v. Daros Intern., Inc.*, 613 F.3d 395, 401 (3d Cir. 2001) (citing *State Farm Mut. Auto Ins. Co. v. Estate of Simmons*, 84 N.J. 28 (1980)). This "most significant relationship test," adopted from the principles set forth in § 188 and § 6 of the

17

NOT FOR PUBLICATION

Restatement (Second) of Conflicts of Laws, *see Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*,
134 N.J 96 (N.J. 1993), directs courts to consider a number of factors, including: (a) the place of
contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the
location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of
incorporation and place of business of the parties. *Forestal Guarani*, 613 F.3d at 401 (citing
Restatement (Second) of Conflicts of Laws § 188(2) (1971)). Courts should also consider (a) the
needs of the interstate and international systems, (b) the relevant policies of the forum (c) the
relevant policies of other interested states and the relative interests of those states in the
determination of the particular issue, (d) the protection of justified expectations, € the basic
policies underlying the particular field of law, (f) certainty, predictability and uniformity of
result, and (g) ease in the determination and application of the law to be applied. *Id.* (citing
Restatement (Second) of Conflicts of Laws § 6(2)).

     **2. Analysis**

     The Court first determines whether a conflict exists between the laws of California and
New Jersey and then, if necessary, determines which state has the "most significant relationship"
with the parties and walnut contracts.

     **a. Step One: a conflict exists between California and New Jersey law**

     The central dispute here is whether the parties reached a valid agreement to arbitrate
claims arising out of the walnut contracts. *See* ECF No. 4 at 1-2. Plaintiff claims that the "mutual
assent" requirement for the formation of valid arbitration agreements is the same under New
Jersey and California law. This Court disagrees.

     Plaintiff is correct that both New Jersey and California's arbitration acts, N.J.S.A.
2A:23B-1-32 and Cal. Code Civ. P. §§ 1280-1294.2, are modeled after the FAA. ECF No. 12 at

18

NOT FOR PUBLICATION

9-10 (citing *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 440 (N.J. 2014), *cert. denied*,

135 S. Ct. 2804 (2015) (describing FAA and New Jersey Arbitration Act ("NJAA") as "nearly

identical)); *Valencia v. Smyth*, 185 Cal. App. 4th 153, 176 (Cal. Ct. App. 2010) ("Both the FAA

and the [California Arbitration Act ("CAA")] employ the *same* principles of contract

interpretation.")). Both the NJSAA and the CAA require that an "agreement to arbitrate, like any

other contract, must be the product of mutual assent, as determined under customary principles

of contract law." *Atalese*, 219 N.J. at 442 (internal quotation omitted); *see also Knutson v. Sirius

XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (It is "undisputed that under California law,

mutual assent is a required element of contract formation") (citing *Binder v. Aetna Life Ins. Co.*,

75 Cal. App. 4th 832, 850 (Cal. 1999)); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal.

App. 4th 50, 60 (Cal. Ct. App. 2013) ("Arbitration is therefore a matter of contract. The policy

favoring arbitration cannot displace the necessity of for a voluntary *agreement* to arbitrate. . . .

Contract law also requires the parties agree to the same thing in the same sense") (internal

citations and quotations omitted, emphasis in original). This does not mean, however, that both

states interpret the "mutual assent" requirement identically.

In *Atalese*, the New Jersey Supreme Court held that "mutual assent" requires that parties

to an arbitration provision be placed on notice that they are waiving their right to have claims

adjudicated in a court of law. *Id.* at 442-43. The court noted that "[n]o particular form of words is

necessary to accomplish a clear and unambiguous waiver of rights" but held that the "waiver-of-

rights language . . . must be clear and unambiguous – that is, the parties must know that there is a

distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 443-45.

Plaintiff claims the arbitration clause in the walnut contracts is not a valid agreement under New

Jersey law because it does not contain an explicit waiver-of-rights disclaimer. ECF No. 4 at 1-2.

NOT FOR PUBLICATION

No such explicit disclaimer is required under California law. Although Plaintiff is correct

that a valid arbitration provision under California law must "clearly and unambiguously show

that the party has agreed to resolve disputes in a form *other than* the judicial one," ECF No. 12 at

15 (quoting *Badie v. Bank of America*, 67 Cal. App. 4th 779, 807 (Cal. Ct. App. 1998) (emphasis

in original)), "an effective waiver, particularly in a nonadhesive contract, need not expressly state

'I waive my right to a jury trial' or words to that effect." *Badie*, 67 Cal. 4th at 807 (citing

*Madden v. Kaiser Foundation Hospitals*, 17 Cal. 3d 699, 714 (Cal. 1976) (Holding that "to

predicate the legality of a consensual arbitration agreement upon the parties' express waiver of

jury trial would be as artificial as it would be disastrous" because parties "well know" that

arbitration "disputes are not resolved by juries")).[3]

*Avery*, the sole California case Plaintiff discusses in detail to argue that the California and

New Jersey "mutual assent" standards are the same, *see* ECF No. 12 at 11-13, did not address the

necessity of waiver-of-rights language at all. 218 Cal. App. 4th at 66-70. In *Avery*, the California

Court of Appeals refused to enforce arbitration provisions in an employee application and

"employee acknowledgment form" for lack of mutual assent, but the issue was not that the

provisions lacked disclaimers about the waiver of rights to a jury trial. Instead, the court found

that the plaintiffs and the defendant had not assented to the "same thing" because the provisions

specifically referred to arbitration terms contained in another document, the "Fair Treatment

Process," which the plaintiffs did not receive. *Id*. Although the employee application and

employee acknowledgment form both specifically stated that the plaintiffs agreed to submit their

---

[3] In any event, *Badie* did not involve the enforceability of an arbitration agreement, but rather the
enforceability of a contract that allowed the defendant to unilaterally alter the contract's terms,
permitting the defendant to add an arbitration provision without the plaintiffs' direct consent. *See*
*Badie*, 67 Cal. App. 4th at 798-807.

NOT FOR PUBLICATION

disputes to binding arbitration, the court rejected the argument that they were "stand-alone arbitration agreements" because they were "incomplete without the Fair Treatment Process, which each document incorporated as the governing process for resolving all disputes." *Id.* at 70. Plaintiff cites *Avery*'s holding that, "[f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties," *id.* at 66 (citing *Wolschlager v. Fidelity National Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (Cal. Ct. App. 2003)), to argue that it could not have assented to the arbitration clause in the walnut contracts under California law because the clause did not incorporate or make "easily available" DFA's arbitration rules. *See* ECF No. 12 at 12-13. This Court reads *Avery* to hold that a party cannot, by signing one document, consent to an arbitration provision in *another* document unless the first document explicitly incorporates or makes available the arbitration provision. *Avery* does not hold that a stand-alone arbitration agreement itself must incorporate or make available all rules and procedures of the entity arbitrating disputes.[4]

Because New Jersey law requires an arbitration provision to contain waiver-of-rights language for parties to reach "mutual assent" and California law does not, a conflict exists between New Jersey and California law.

---

[4] The arbitration provision contained in the "Fair Treatment Process" document was the second arbitration provision on which the defendant relied. The California Supreme Court also invalidated a first, more recent arbitration agreement contained in an employee handbook because the handbook was issued *after* the plaintiffs' claims accrued, the plaintiffs did not sign or explicitly agree to the arbitration provision, and evidence suggested that at least one plaintiff had never received a copy of the handbook containing the provision. *Avery*, 218 Cal. App. 4th at 60-61.

NOT FOR PUBLICATION

### b. Step Two: California has the more significant relationship to the Parties and contracts

The Court now applies New Jersey's multi-factor "most significant relationship" test to determine whether New Jersey or California law governs the construction of the arbitration clause in the walnut contracts.

Place of contracting, the first factor listed in § 188 of the Second Restatement of Conflict of Laws, *see Forestal Guarani*, 613 F.3d at 401 (citing Restatement (Second) of Conflicts of Laws § 188(2)), does not favor either state. Plaintiff presumably executed the walnut contracts in New Jersey, and Defendant GDNC executed the contracts in California. ECF No. 6-3 ¶ 8.

The second factor, the place of negotiation of the contract, may favor the application of California law. As discussed, Mr. Kadouri negotiated the walnut contracts on behalf of Plaintiff IFS. ECF No. 1-1 ¶¶ 14-18. Defendants claim that Mr. Kadouri visited Defendant GDNC's facility in California and requested that samples be sent to his office in New York. *Id.* ¶¶ 4-8. Plaintiffs do not respond to the claim that Mr. Kadouri visited California but contest that he worked out of the IFS facility in New Jersey, not New York. ECF No. 12 at 3 n.5. The Court will assume, based on the limited record under a motion to dismiss standard, that this factor favors neither state.

The third factor, place of performance, favors the application of California law. As discussed, the walnut contracts specified that Plaintiff was to take delivery of the walnuts at Defendant's facility in Hughson, California. *Id.* ¶ 9; *see also* ECF No. 1-1 Ex. A; ECF No. 6-3 Ex. B.

For the same reason, the fourth factor, location of the subject matter of the contract, favors the application of California law: the walnuts were located in California. *Id.*

NOT FOR PUBLICATION

The fifth factor, the location of the parties, favors neither state: Plaintiff is located in New Jersey, ECF No. 1-1 ¶ 5, and Defendants are located in California. *Id.* ¶¶ 6-7.

The factors listed in § 6 of the Restatement, *see Forestal Guarani*, 613 F.3d at 401 (citing Restatement (Second) of Conflicts of Laws § 6(2)), also slightly favor the application of California law. Both states have clearly defined policies and doctrines that would allow the Court to determine the enforceability of the arbitration clause in a way that benefits systems of interstate commerce. To repeat, Defendant GDNC, the seller of the walnuts, is located in California. This Court has previously held that § 6 "arguably favors applying the law of the state in which a dealer is located because it has the greatest policy interest in regulating these sales transactions." *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, 2012 WL 924380, at *11 (D.N.J. Mar. 19, 2012) (Walls, J.) (citing *Mazzuocola v. Thunderbird Prods. Corp.*, 1995 WL 311397, at *5-6 (E.D.N.Y. May 16, 1995)).

Although both states have a relationship to the Parties and contracts, California has the more significant relationship. Under New Jersey's choice-of-law rules, the Court will apply California law to the construction of the arbitration clause.

**C. The arbitration clause requires arbitration of Plaintiff's claims**

Under the FAA, "[i]n order to determine if there is an enforceable arbitration agreement between the parties that compels arbitration and a stay or dismissal of the present action, a court must consider the following issues: (1) does a valid agreement to arbitrate exist between the parties, and (2) do the plaintiff's claims fall within the substantive scope of the valid arbitration agreement." *Kelly*, 528 F. Supp. 2d at 493 (citing *PaineWebber v. Hartmann*, 921 F.2d 507, 510-11 (3d Cir. 1990)). The Court now applies California law to determine whether the arbitration clause in the walnut contracts is valid and whether Plaintiff's claims fall within the scope of the

23

NOT FOR PUBLICATION

arbitration clause. Defendants, as the parties seeking to compel arbitration, have the burden of

proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson*,

771 F.3d at 565.

### 1.   The arbitration clause is a valid, enforceable agreement

To repeat, arbitration is a matter of contract, *id.*, and "under California law, mutual assent

is a required element of contract formation." *Id.*; *see also Badie*, 67 Cal. App. 4th at 787-88

("The initial step in determining whether there is an enforceable [arbitration] agreement . . .

involves applying ordinary state law principles that govern the formation and interpretation of

contracts . . . . Although the law favors contracts for arbitration of disputes between parties, there

is no policy compelling persons to accept arbitration of controversies which they have not agreed

to arbitrate") (internal quotations and citations omitted). "Mutual assent exists when a reasonable

person would conclude from the outward conduct of the parties that there was mutual agreement

regarding their intent to be bound." *Burch v. Premier Homes, LLC*, 199 Cal. App. 4th 730, 746

(Cal. Ct. App. 2011) (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting &

Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049-50 (Cal. 2001)). "Mutual assent may be

manifested by written or spoken words, or by conduct." *Knutson*, 771 F.3d at 565 (quoting

*Binder*, 75 Cal. App. 4th at 850). "Ordinarily, one who accepts or signs an instrument, which on

its face is a contract, is deemed to assent to all its terms." *Randas v. YMCA of Metro. L.A.*, 17

Cal. App. 4th 158, 163 (1993) (citing 1 Witkin, Summary of Cal. Law § 120, p. 145 (9th ed.

1987)).

"This principle of knowing consent applies with particular force to provisions for

arbitration." *Id.* at 566 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d

987, 993 (Cal. 1972)). "If a party wishes to bind in writing another to an agreement to arbitrate

NOT FOR PUBLICATION

future disputes, such purpose should be accomplished in a way that each party to the
arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds
the parties thereto." *Id*. (quoting *Com. Factors Corp. v. Kurtzman Bros.*, 131 Cal. App. 2d 133,
136 (Cal. 1955)). "[A]n offeree, regardless of apparent manifestation of his consent, is not bound
by inconspicuous contractual provisions of which he was unaware, contained in a document
whose contractual nature is not obvious." *Id*. (quoting *Windsor Mills*, 25 Cal. App. 3d at 993).

  The arbitration clause in the walnut contracts is a valid agreement under California law.
As an initial matter, the clause is (a) in writing (b) in documents labeled "Sales Contract" that are
(c) signed by the Parties. *See*, e.g., ECF No. 1-1 Ex. A. Unlike in the cases discussed by Plaintiff,
the arbitration clause was not merely incorporated into the contracts by reference, *see Avery*, 218
Cal. App. 4th at 66-70; or added retroactively to a contract that Plaintiff had already signed, *see*
*Badie*, 67 Cal. App. 4th at 798-807; or stricken from the contracts during contract negotiations,
*see Burch*, 199 Cal. App. 4th at 869 (parties did not enter into arbitration agreement stricken
from early drafts of contract); nor was it unclear from the face of the documents that Plaintiff
was entering into contracts, *see Knutson*, 771 F.3d at 568 (arbitration agreement in contract with
defendant satellite radio provider was not supported by mutual assent because plaintiff entered
into the contract merely by failing to cancel an auto-renewing radio subscription included in the
purchase of a new vehicle, where the plaintiff did not receive a copy of the contract and was
unaware he had entered into a contractual relationship with defendant at all). The terms of the
arbitration clause in the walnut contracts were available in their entirety at the time Plaintiff

NOT FOR PUBLICATION

signed documents identified as "contracts," indicating, to a reasonable person, the Parties' mutual consent to be bound by the terms of the clause.[5]

The terms of the arbitration clause are also sufficiently clear to demonstrate a meeting of the minds. The clause states that "[a]ny claim relating to this contract shall be settled by arbitration in California by the DFA with its rules, and judgement may be entered upon." *See*, e.g., ECF No. 1-1 Ex. A. Plaintiff is correct that the arbitration clause does not contain an explicit waiver of Plaintiff's ability to sue Defendant GDNC "in a judicial forum." ECF No. 1-1 ¶ 27. Plaintiff also correctly observes that the arbitration clause does not "explain what arbitration is or how arbitration differs from a proceeding in a court of law." *Id*. But these explicit disclaimers are not required under California law, and parties are presumed to "well know" that arbitrated disputes "are not resolved by juries." *Madden*, 17 Cal. 3d at 714. Requiring explicit waiver-of-jury-trial language would "frustrate the parties' interests and destroy the sanctity of their mutual promises." *Id*.[6]

---

[5] Plaintiff claims that the arbitration clause is "printed in non-emphasized fine print," ECF No. 1-1 ¶ 24, but it does not directly argue that it failed to notice the arbitration clause. In any event, the Court observes that the "Buyer Conditions" section of the one-page walnut contracts is printed in the same font size as several other sections and is located immediately above the signature lines. *See* ECF No. 1-1 Ex. A.

[6] The Court observes that the arbitration clause, unlike those in several cases cited by Plaintiff, is not a contract of adhesion, where the "stronger party drafts the contract, and the weaker has no opportunity, either personally through an agent, to negotiate concerning its terms." *Madden*, 17 Cal. 3d at 711. California courts will "will not enforce provisions in adhesion contracts which limit the duties or liability of the stronger party unless such provisions are conspicuous, plain and clear." *Id*. (quotation omitted). Although Defendant GDNC drafted the contract, *see* ECF No. 1-1 ¶ 20, Plaintiff provides no indication that it was unable to negotiate the contract terms. The Court also observes that Plaintiff is not a consumer or employee entering into a contract with a large company, but an "importer, repacker, manufacturer, and wholesaler" of food products with over ten years of industry experience and a history of contracting with Defendant GDNC. *See id*. ¶¶ 9, 12.

NOT FOR PUBLICATION

It is also true that the arbitration clause in the walnut contracts is relatively undetailed. It does not explain what DFA is or the nature of its "rules." ECF No. 1-1 Ex. A. Defendants demonstrate, however, that courts have approved arbitration agreements with similar language to the arbitration clause here. ECF No. 6 at 12 (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) (assuming, without deciding, that arbitration clauses stating, "in relevant part," that "[a]ll disputes arising in connection with this Agreement shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said rules," were valid agreements and holding that, under the FAA, the agreements required arbitration of plaintiff's claims); *California Prune & Apricot Growers' Ass'n v. Catz American Co.*, 60 F.2d 788, 790 (9th Cir. 1932) (holding that an arbitration agreement providing that "any disputes arising under the said agreement be settled by arbitration before the Dried Fruit Association of California" "was a valid contract under the state law," but reversing district court's order compelling arbitration for lack of subject matter jurisdiction)).

Plaintiff refers to *SHC Laguna Niguel 1 LLC v. Marriott Intern., Inc.*, where the California Court of Appeals affirmed the trial court's invalidation of another sparsely worded arbitration provision, holding that it was "so ambiguous as to the parties' obligations" that there was "no meeting of the minds" to create a valid agreement. ECF No. 12 at 17 (citing *SHC Laguna Niguel 1 LLC v. Marriott Int'l,* 2004 WL 179371, at *2 (Cal. Ct. App. 2004)). This case is unlike that. Unlike the clause at issue in the walnut contracts, the invalid provision in *SHC Laguna Niguel 1* was not an explicit arbitration clause: instead, it was a contract section labeled "Consequences of Non-Compliance" that defined the defendant's obligations if an unspecified "Expert" determined that the defendant had violated the contract. 2004 WL 179371, at *1.

NOT FOR PUBLICATION

Although the defendant attempted to compel arbitration under this section, the court held that it

was not a valid agreement because it did not identify the "Expert" or how the plaintiffs could

seek an expert determination; the provision did not actually discuss arbitration. *Id.* Importantly,

the provision was also labeled "Open Issues," indicating that the parties had not settled on

specific terms when they signed the contract – *i.e.*, had not reached mutual assent – but had

"agreed to leave the open issue[ ] for future resolution." *Id.* In contrast, here the arbitration

clause in the walnut contracts expressly refers to the resolution of disputes by DFA arbitration

and does not reserve the construction of contractual terms for a later date. The Court determines

that the arbitration clause in the walnut contracts is a valid agreement under California law.

Plaintiff provides no other argument against the enforceability of the arbitration clause.

### 2.   Plaintiff's claims fall within the scope of the arbitration clause

To repeat, the arbitration clause in the walnut contracts provides that "[a]ny claim

relating to this contract shall be settled by arbitration in California by the DFA with its rules."

*E.g.* ECF No. 1-1 Ex. A. The Parties do not dispute that Defendants' arbitration claims and

Plaintiffs' claims in the complaint are all "relating to" the walnut contracts. *See* ECF No. 1-1 ¶¶

44-45 (Count One, seeking declaratory judgment that the "arbitration provisions in the Contracts

are unenforceable"; ¶ 53 (Count Two, alleging that "GDNC has breached the implied covenant

of good faith and fair dealing which is inherent in the Contracts"); ¶ 58 (Count Three, alleging

that Plaintiff relied upon "false reputations in executing the Contracts with GDNC"); ¶ 64 (Count

Four, alleging that Plaintiff relied upon "false reputations in executing the Contracts with

GDNC"); ¶ 68 (Count Five, alleging that Defendant DGNC "made negligent misrepresentations

or omissions of fact . . . in connection with the Contracts"); ¶ 76 (Count Six, alleging that

"GDNC has attempted to hold IFS liable for the full price set forth in the Contracts without

NOT FOR PUBLICATION

complying with its obligations pursuant to the Uniform Commercial Code and New Jersey law");
Def. Request for Arbitration ECF No. 6-3 Ex. D (seeking, "[p]ursuant to the contracts . . . the
total sum of $915,600, which was the bargained for sales price").

Plaintiff's claims fall within the substantive scope of a valid arbitration agreement. "By
its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead
mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which
an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,
218 (1985) (citing 9 U.S.C. §§ 3, 4). It follows that the Court must grant Defendants' motion to
compel arbitration.

### III.   A stay of the arbitration proceedings is not warranted, and Plaintiff's motion for a preliminary injunction is denied

Because the Court has determined that Plaintiff is bound by its agreement to arbitrate all
claims arising out of the walnut contracts, it must deny Plaintiff's motion for a preliminary
injunction staying the arbitration proceedings. *See Thomas Global Group*, 2014 WL 1371719 at
*4 (Holding, under a similar procedural posture, that a "motion to enjoin the arbitration is
nothing more than the flipside of [a] motion to compel the arbitration," and that if "the Court
finds that [plaintiff] is contractually obligated to arbitrate any of its claims against any of the
Defendants, the Rule 65 motion would necessarily fail" because "a party simply cannot be
irreparably harmed by being compelled to arbitrate against its will pursuant to a binding
contract").

### IV.   Plaintiff's motion for a temporary restraining order is denied

NOT FOR PUBLICATION

Because the Court denies Plaintiff's motion for a preliminary injunction, Plaintiff's motion for a temporary restraining order pending the resolution of the preliminary injunction motion is moot.

**V.    The Court declines to reach the remaining arguments**

Because the Court applies California law to deny Plaintiff's motions, compel arbitration, and grant a stay of this action pending arbitration, it need not address Defendants' arguments that *Atalese* applies only to consumer contracts or that *Atalese* is preempted by the FAA. Because the Court stays this action pending the resolution of all claims in DFA arbitration, the Court reserves judgment on Defendants' argument that the Court lacks personal jurisdiction over Defendant Martella.

## CONCLUSION

The Court finds that the Parties entered into an enforceable agreement to arbitrate all disputes arising under the walnut contracts, including the claims in Plaintiff's complaint. The Court denies Plaintiff's motions for a temporary restraining order and preliminary injunction staying the arbitration proceeding pending resolution of this case and grants Defendants' motion to compel arbitration. The action is stayed pending resolution of Plaintiff's claims in accordance with the terms of the arbitration clause in the walnut contracts. An appropriate order follows.

DATE: 3 August 2016

William H. Walls
Senior United States District Court Judge

30